1 | SEYFARTH SHAW LLP
Jonathan L. Brophy (SBN 245223)
2 | jbrophy@seyfarth.com
Heather E. Horn (SBN 318242)
3 | hhorn@seyfarth.com
2029 Century Park East, Suite 3500
4 | Los Angeles, California 90067-3021
Telephone:   (310) 277-7200
5 | Facsimile:   (310) 201-5219

6 | Attorneys for Defendants
T.J. Maxx of CA, LLC and
7 | The TJX Companies, Inc.

8

9 | UNITED STATES DISTRICT COURT

10 | CENTRAL DISTRICT OF CALIFORNIA

11

12

13 | DORIAN MOORE, an individual,

Plaintiff,

14 | 

v.

15 | 

T.J. MAXX, a business entity of unknown
16 | form; TJX, a business entity of unknown
form; TJX U.S., a business entity of
17 | unknown form; THE TJX COMPANIES,
INC., a business entity of unknown form;
18 | NASI DOE, an individual; and DOES 1-50,

19 | Defendants.

Case No.

**DEFENDANTS T.J. MAXX OF CA,
LLC, AND THE TJX COMPANIES,
INC'S NOTICE OF REMOVAL OF
CIVIL ACTION TO UNITED
STATES DISTRICT COURT**

[*Filed Concurrently With Declaration Of
Joan Meltzer In Support*; *Declaration Of
W. Alex Koch In Support*; *Declaration Of
Heather E. Horn In Support*; *Corporate
Disclosure Statement*; *Notice Of
Interested Parties*; *Civil Cover Sheet*; *and
Proof of Service*]

[Removed from Los Angeles County
Superior Court, Case No. 22STCV21826]

Date Action Filed:   July 6, 2022
Trial Date:               None Set

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    BACKGROUND .................................................................................... 1

II.   TIMELINESS OF REMOVAL ............................................................ 3

III.  PROCEEDINGS IN STATE COURT .................................................. 4

IV.   JURISDICTION BASED ON DIVERSITY OF CITIZENSHIP .......... 4

    A.    Plaintiff Is A Citizen Of California .............................................. 4

    B.    Defendant "The TJX Companies, Inc." Is Not A Citizen of California ........ 5

    C.    Defendant "T.J. Maxx of CA, LLC," Is Not A Citizen Of California ........... 6

        1.    NBC Operating, LP, Is Not A Citizen Of California ........................ 7

        2.    NBC GP, LLC Is Not a Citizen Of California ................................. 8

        3.    NBC Trust Is Not A Citizen Of California .................................... 9

    D.    Dismissed Defendant "TJX, Inc." Cannot Defeat Diversity .......................... 9

    E.    Doe Defendants May Be Disregarded ............................................. 10

    F.    Defendant Nasi Doe's Citizenship Should Be Disregarded Because She is A Sham Defendant ........................................................ 10

        1.    Conduct Allegedly Carried Out By Defendant Nasi Doe ................. 12

        2.    Nasi Doe Is A Sham Defendant Because The Lack Of Severe Or Pervasive Conduct Precludes Personal Liability On Her Workplace Harassment Claim ......................................... 15

V.    AMOUNT IN CONTROVERSY .......................................................... 16

VI.   VENUE ................................................................................................ 22

VII.  NOTICE OF REMOVAL .................................................................... 22

VIII. RESERVATION OF RIGHTS ............................................................ 23

IX.   PRAYER FOR REMOVAL ................................................................ 23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Balisteri v. Pacifica Police Dep't,*
   901 F.2d 696 (9th. Cir. 1990) ...................................................................... 11

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ...................................................................................... 11

*Carden v. Arkoma Assocs.,*
   494 US 185, 110 S.Ct. 1015 (1990) .............................................................. 7

*Chohlis v. Cessna Aircraft Co.*
   760 F2d 901 (8th Cir. 1985) ......................................................................... 9

*Conrad Assocs. v. Hartford Accident & Indem. Co.,*
   994 F. Supp. 1196 (N.D. Cal. 1998) ........................................................... 17

*Davenport v. Mut. Benefit Health & Accident Ass'n,*
   325 F.2d 785 (9th Cir. 1963) ................................................................. 17, 21

*Davis v. HSBC Bank Nevada, N.A.,*
   557 F.3d 1026 (9th Cir. 2009) ............................................................. 5, 6, 7

*Delatte v. Zurich Ins. Co.*
   683 F.Supp. 1062 (MD LA 1988) ................................................................ 9

*Dodson v. Spillada Maritime Corp.,*
   951 F.2d 40 (5th Cir. 1992) ........................................................................ 10

*Fristoe v. Reynolds Metals, Co.,*
   615 F.2d 1209 (9th Cir. 1980) .................................................................... 10

*Galt G/S v. JSS Scandinavia,*
   142 F. 3d 1150 (9th Cir. 1998) ............................................................. 17, 20

*Gaus v. Miles, Inc.,*
   980 F.2d 564 (9th Cir. 1992) ...................................................................... 16

*Grupo Dataflux v. Atlas Global Grp., LP,*
   541 US 567 (2004) ........................................................................................ 7

*Hardin v. Wal-Mart Stores, Inc.*,
   No. CIV-F-08-0617 AWI, 2012 WL 691707 (E.D. Cal., Mar. 2, 2012)................... 16

*Harris v. Bankers Life & Cas. Co.*
   (9th Cir. 2005) 425 F3d 689 ....................................................................................... 3

*Heniford v. American Motors Sales Corp.*
   471 F.Supp. 328 (D SC 1979) ................................................................................... 9

*Higgins v. Pittsburgh-Des Moines Co.*
   635 F.Supp. 1182 (SD TX 1986).............................................................................. 9

*Kanter v. Warner-Lambert Co.*,
   265 F.3d 853 (9th Cir. 2001) ..................................................................................... 5

*Kantor v. Wellesley Galleries, Ltd.*,
   704 F.2d 1088 (9th Cir. 1983) ................................................................................... 4

*Knudson v. Systems Painters, Inc.*,
   *634 F3d 968 (8th Cir. 2011)* .................................................................................... 4

*Lewis v. Time, Inc.*,
   83 F.R.D. 455 (E.D. CAL. 1979), *aff'd*, 710 F.2d 549 (9th Cir. 1983)..................... 11

*McCabe v. Gen. Foods Corp.*,
   811 F.2d 1336 (9th Cir. 1987) ............................................................................ 11, 13

*Meritor Savings Bank v. Vinson*,
   477 U.S. 57 (1986)................................................................................................... 15

*Morris v. Princess Cruises, Inc.*,
   236 F.3d 1061 (9th Cir. 2001) ............................................................................ 10, 11

*Naef v. Masonite Corp.*
   923 F.Supp. 1504 (SD AL 1996)............................................................................. 9

*Peacock v. Quest Diagnostics*,
   2010 WL 6806990 (C.D. Cal.) ............................................................................... 20

*Ritchey v. Upjohn Drug Co.*,
   139 F.3d 1313 (9th Cir. 1998), *cert. denied*, 525 U.S. 963 (1998) ..................... 10, 11

*Sanchez v. Monumental Life Ins.*,
   102 F.3d 398 (9th Cir. 1996) ........................................................................ 16, 17, 18

*State Farm Mut. Auto Ins. Co. v. Dyer*,
    19 F.3d 514 (10th Cir. 1994) ................................................................. 5

*State Farm Mutual Automobile Insurance Co. v. Campbell*,
    538 U.S. 408 (2003) ........................................................................... 21

*The Hertz Corp. v. Friend*,
    130 S. Ct. 1181 (2010) ..................................................................... 5, 6

*Toth v. Guardian Indus. Corp.*,
    2012 WL 468244 (E.D. Cal. Feb. 13, 2012) ...................................... 11

*V & M Star, LP v. Centimark Corp.*,
    596 F.3d 354 (6th Cir. 2010) ............................................................... 8

*Valdez v. Allstate Ins. Co.*,
    372 F.3d 1115 (9th Cir. 2004) ........................................................... 16

*Ward v. Cadbury Schweppes Bottling Grp.*,
    2011 WL 7447633 (C.D. Cal) ..................................................... 20, 22

**State Cases**

*Davis v. Robert Bosch Tool Corp.*,
    2007 WL 2014301 (Cal. Ct. App. 2d Dist. July 13, 2007) ................ 20

*Fisher v. San Pedro Peninsula Hospital*,
    214 Cal. App. 3d 590 (1989) ............................................................. 15

*Hughes v. Pair*,
    46 Cal. 4th 1035 (2009) .................................................................... 15

*Janken v. GM Hughes Elecs.*,
    46 Cal. App. 4th 55 (1996) ............................................................... 14

*Lane v. Hughes Aircraft Co.*,
    22 Cal. 4th 405 (2000) ...................................................................... 21

*Lyle v. Warner Bros. Television Prods.*,
    38 Cal. 4th 264 (2006) ...................................................................... 15

*Mokler v. County of Orange*,
    157 Cal. App. 4th 121 (2007) ........................................................... 15

DEFENDANTS' T.J. MAXX OF CA, LLC AND THE TJX COMPANIES, INC.'S NOTICE OF REMOVAL

*Reno v. Baird*,
  18 Cal. 4th 640 (1998) ................................................................. 12, 14, 16

**Federal Statutes**

28 U.S.C. 1332(c)(1) ............................................................................ 6

28 U.S.C. § 84 (c) ............................................................................... 22

28 U.S.C. § 1332 ............................................................................ 1, 10

28 U.S.C. § 1332(a) ............................................................................ 17

28 U.S.C. § 1332(a)(1) ..................................................................... 4, 22

28 U.S.C. § 1332(c)(1) ...................................................................... 5, 6

28 U.S.C. § 1441(a) .............................................................. 1, 4, 10, 22

28 U.S.C. § 1441(b) .............................................................................. 1

28 U.S.C. § 1446(a) ...................................................................... 22, 23

28 U.S.C. § 1446(b) .............................................................................. 3

28 U.S.C. § 1446(b)(3) ......................................................................... 3

28 U.S.C. § 1446(c)(2) ......................................................................... 17

28 U.S.C. § 1446(d) ............................................................................ 22

**State Statutes**

*Gov't Code* 12940(i) ....................................................................... 1, 18

*Gov't Code* 12940(a) ...................................................................... 1, 18

*Gov't Code* 12940(h) ...................................................................... 1, 18

*Gov't Code* 12940(k) ...................................................................... 1, 18

*Labor Code* § 1102.5 ...................................................................... 1, 18

**Rules**

Federal Rules of Civil Procedure Rule 12(b)(6) ............................................. 11

v

**Other Authorities**

*Aboulafia v. GACN Inc.*,
   2013 WL 8115991 (Los Angeles Sup. Ct.) ...................................................... 20

*Aboulida v. GACN Inc.*,
   2013 WL 811991 (Los Angeles Sup. Ct.) ........................................................ 22

*Assaad v. State of California*,
   2017 WL 2831363 (Los Angeles County Sup. Ct.) ...................................... 19

*Beard v. Los Angeles Cnty. Law Library*,
   2009 WL 250543 (Los Angeles Sup. Ct.) ........................................................ 19

*Crawford v. DIRECTV, Inc.*,
   2010 WL 5383296 (Los Angeles County Sup. Ct.) ...................................... 20

*Denenberg v. Cal. Dep't of Transp.*,
   2006 WL 5305734 (San Diego County Sup. Ct.) .......................................... 20

*Harris v. Herring Networks Inc.*,
   2020 WL 1890593 (San Diego County Sup. Ct.) .......................................... 19

*Leggins v. Thrifty Payless Inc. D/B/A/ Rite Aid*,
   2015 WL 4748037 (Los Angeles County Sup. Ct.) ...................................... 19

*Leimandt v. Mega RV Corp.*,
   2011 WL 2912831 (Orange County Sup. Ct.) ................................................ 20

*Silverman v. Stuart F. Cooper Inc.*,
   2013 WL 5820140 (Los Angeles Sup. Ct.) ...................................................... 19

*Vasquez v. Los Angeles Cnty. Metro. Transp. Auth.*,
   2013 WL 7852947 (Los Angeles Sup. Ct.) ...................................................... 19

*Welch v. Ivy Hill Corp.*,
   2011 WL 3293268 (Los Angeles Sup. Ct.) ...................................................... 20

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFF DORIAN MOORE AND HER COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Defendants T.J. Maxx of CA, LLC, and The TJX Companies, Inc. (collectively, "Defendants") hereby file this notice of removal pursuant to 28 U.S.C. sections 1332, and 1441(a) and (b), based on diversity of citizenship jurisdiction, in order to remove the above-captioned action from the Superior Court for the County of Los Angeles to the United States District Court for the Central District of California, and state that the removal is proper for the following reasons:

## I. BACKGROUND

1. On July 6, 2022, Plaintiff Dorian Moore, ("Plaintiff") filed a Complaint in the Superior Court of California for the County of Los Angeles, entitled "*DORIAN MOORE, an individual Plaintiff, vs. T.J. MAXX, a business entity of unknown form; TJX, a business entity of unknown form; TJX U.S., a business entity of unknown form; THE TJX COMPANIES, INC., a business entity of unknown form; NASI DOE, an individual; and DOES 1-50, Defendants,*" designated as Case No. 22STCV21826 ("Complaint").

2. The Complaint alleges seven causes of action: (1) "Race Discrimination (FEHA) [*Gov't Code* 12940(a)]"; (2) "Harassment (FEHA) [*Gov't Code* 12940(i)]"; (3) "Retaliation [*Gov't Code* 12940(h)]"; (4) "Failure to Take all Reasonable Steps to Prevent Discrimination, Harassment, and Retaliation" [*Gov't Code* 12940(k)]; (5) "Whistleblower Protection [*Labor Code* §1102.5]"; (6) Wrongful Discharge in Violation of Public Policy; and (7) Unfair Business Practices.  Plaintiff also asserts her Second Cause of Action for "Harassment on the Basis of National Origin, Race, and Ancestry" against individual Defendant Nasi.

3. On August 12, 2022, Plaintiff filed an Amendment to Complaint (Fictitious/Incorrect Name) naming Plaintiff's employer, T.J. Maxx of CA, LLC, a Virginia Limited Liability Company as DOE 1. A true and correct copy of the

Amendment is attached to the Declaration of Heather E. Horn in support of this Notice of Removal as **Exhibit B**.

4.     Also, on August 12, 2022, Plaintiff filed an Amendment to Complaint erroneously adding TJX Inc., a California Corporation as DOE 2.  Defendants' review of the California Secretary of State website reveal that TJX Inc., California Corporation is a Trucking Company and is not a TJX Corporate Entity or related party. A true and correct copy of the Amendment and Statement of Information for TJX Inc., California Corporation is attached to the Declaration of Heather E. Horn in support of this Notice of Removal as **Exhibits C and D**.

5.     On October 17, 2022, Defendant T.J. Maxx of CA received, via process server, the Summons, Complaint, Amendment to Complaint, Civil Case Cover Sheet, Notice of Case Assignment, Notice of Ruling, General Order, Stipulation Package, and Alternate Dispute Resolution Information Package. A true and correct copy of the packet is attached to the Declaration of Heather E. Horn in support of this Notice of Removal as **Exhibit A**.

6.     As of the time of filing of the Notice of Removal, Defendant The TJX Companies, Inc., has not been served, but consents to the filing of this Notice of Removal.

7.     As of the time of filing of the Notice of Removal T.J. Maxx , TJX, and TJX U.S. have not been served. Defendants' review of the California Secretary of State website reveals that T.J. Maxx , TJX, and TJX U.S. are not active corporate entities in the State of California nor have a business or legal association with Plaintiff's employer, T.J. Maxx of CA, LLC or parent company The TJX Companies, Inc. (Declaration of Heather E. Horn ("Horn Decl."), ¶ 4.)

8.     As of the time of filing of the Notice of Removal, "Nasi" has also not been served.

9.     On November 16, 2022, Defendant T.J. Maxx of CA, LLC, timely filed its Answer to Plaintiff's Complaint in Los Angeles County Superior Court.  A true and

2

correct copy of Defendant T.J. Maxx of CA, LLC, Answer to Plaintiff's Complaint is attached the Horn Decl. as **Exhibit E**.

10.     Also on November 16, 2022, a Request for Dismissal as to Defendant TJX Inc., a California Corporation was filed.  A true and correct copy of the Request for Dismissal is attached to the Horn Decl. as **Exhibits F**.

11.     On **November 21, 2022**, the Los Angeles Superior Court dismissed TJX Inc., a California Corporation without prejudice.  A true and correct copy of the dismissal is attached to the Horn Decl. as **Exhibit G.**

12.     Defendants have not filed or received any other pleadings or papers, other than the pleadings described as **Exhibits A, B, C, E, F and G** in this action prior to this Notice of Removal.  (Declaration of Heather E. Horn ("Horn Decl."), ¶ 2.)

13.     As discussed in greater detail below, T.J. Maxx of CA, LLC, is a citizen of Virginia and Massachusetts.  The TJX Companies, Inc is a citizen of Delaware and Massachusetts.

14.     Plaintiff also names "Nasi Doe" as a "doe defendant" and "sham" defendant, such that for purposes of diversity of citizenship jurisdiction, the individual defendant must be disregarded.

15.     As discussed in greater detail below, jurisdiction based on diversity of citizenship is proper because Defendants T.J. Maxx of CA, LLC, and The TJX Companies, Inc are not citizens of California and the amount in controversy exceeds $75,000.00.

## II.     TIMELINESS OF REMOVAL

16.     "[I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3).  "[N]otice of removability under § 1446(b) is determined through examination of the four corners of the applicable pleadings." *Harris v. Bankers Life &*

3

*Cas. Co.* (9th Cir. 2005) 425 F3d 689, 693.  "[I]f the plaintiff voluntarily dismisses the diversity-destroying defendant, a defendant may then be able to remove the case." *Knudson v. Systems Painters, Inc., 634 F3d 968, 975 (8th Cir. 2011).*

17.   This Notice of Removal is timely, as it is filed within thirty (30) days of the dismissal of Defendant TJX Inc., a California Corporation and within one (1) year of the commencement of this action.

18.    Written notice of the filing of this Notice of Removal is being delivered to Plaintiff through her counsel of record.  A copy of the Notice of Removal will be filed with the Clerk of the Superior Court of the State of California for the County of Los Angeles.

## III.   PROCEEDINGS IN STATE COURT

19.   Attached as **Exhibits A, B, C, E, F and G** to the Declaration of Heather E. Horn are all of the pleadings in the Superior Court's record that have been served on Defendants, filed by Defendants or Plaintiff, or retrieved from the Court's records prior to the filing of this Notice of Removal.  (Horn Decl., ¶ 2.)

20.   Written notice of the filing of this Notice of Removal is being delivered to Plaintiff through her counsel of record.  A copy of the Notice of Removal will be filed with the Clerk of the Superior Court of the State of California for the County of Los Angeles.

## IV.   JURISDICTION BASED ON DIVERSITY OF CITIZENSHIP

21.   The Court has original jurisdiction of this action under 28 U.S.C. section 1332(a)(1).  As set forth below, this action is removable pursuant to the provisions of 28 U.S.C. section 1441(a) as the amount in controversy is in excess of $75,000, exclusive of interest and costs, and is between citizens of different states.

### A.   Plaintiff Is A Citizen Of California

22.   For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled.  *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983).  A person's domicile is the place he or she resides with the intent to remain

4

indefinitely.  *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

Residence is prima facie evidence of domicile.  *State Farm Mut. Auto Ins. Co. v. Dyer*,

19 F.3d 514, 520 (10th Cir. 1994) (holding that "the place of residence is prima facie

[evidence of] domicile").

     23.    Plaintiff is and, at all times since the commencement of this action has

been, a resident and citizen of the State of California.  The Complaint alleges that,

"Plaintiff is, and at all times mentioned in this complaint was, a resident and citizen of

California."  (*See* **Ex. A**, Complaint, ¶ 9.)

     24.    In addition, Defendants' review of Plaintiff's personnel file and public

records reveals that Plaintiff resides in California.  (*See* Horn Decl., ¶3, **Ex. H;**

Declaration of W. Alex Koch ("Koch Decl."), ¶ 5.)

     25.    Plaintiff, therefore, is, and at all times since the commencement of this

action has been, a resident and citizen of the State of California.

### B.    Defendant "The TJX Companies, Inc." Is Not A Citizen of California

     26.    The TJX Companies, Inc is now, and was at the time of the filing of this

action, a citizen of a State other than California within the meaning of 28 U.S.C. section

1332(c)(1).  For diversity purposes, "a corporation is a citizen of (1) the state under

whose laws it is organized or incorporated; and (2) the state of its 'principal place of

business.'"  *Davis v. HSBC Bank Nevada, N.A.*, 557 F.3d 1026, 1028 (9th Cir. 2009)

(citing 28 U.S.C. 1332(c)(1)).

     27.    The United States Supreme Court in *The Hertz Corp. v. Friend*, 130 S. Ct.

1181, 1192 (2010), held that a corporate entity's "principal place of business" for

determining its citizenship is its "nerve center":

> We conclude that "principal place of business" is best read as referring to the
> place where a corporation's officers direct, control, and coordinate the
> corporation's activities.  It is the place that Courts of Appeals have called the
> corporation's "nerve center."  **And in practice it should normally be the
> place where the corporation maintains its headquarters -- provided that
> the headquarters is the actual center of direction, control, and**

**coordination,** *i.e.,* **the "nerve center"** . . . *The Hertz Corp.*, 130 S. Ct. at 1192 (emphasis added).

28.     The TJX Companies, Inc is now, and ever since this action commenced has been, incorporated under the laws of the State of Delaware.  (Declaration of Joan Meltzer ("Meltzer Decl."), ¶ 5.)  Further, as shown below, The TJX Companies, Inc's principal place of business is, and has been at all times since this action commenced, located in the State of Massachusetts.  (*Id.* at ¶ 6.)

29.     Pursuant to *Davis*, 557 F.3d at 1029 and *The Hertz Corp.*, 130 S. Ct. at 1192, The TJX Companies, Inc's principal place of business is Massachusetts because its "nerve center" is located in that state.  The TJX Companies, Inc's corporate headquarters are located in Framingham, Massachusetts where The TJX Companies, Inc's high level officers direct, control, and coordinate its activities.  (Meltzer Decl., ¶ 6.) The TJX Companies, Inc's high level corporate officers maintain offices in Framingham, Massachusetts, and many of The TJX Companies, Inc's corporate level functions are performed in the Framingham, Massachusetts offices.  (*Id.*)  Additionally, many of The TJX Companies, Inc's executive and administrative functions, including corporate finance and accounting, are directed from the Framingham, Massachusetts offices.  (*Id.*)

30.     Therefore, for purposes of diversity of citizenship, The TJX Companies, Inc is, and has been at all times since this action commenced, a citizen of the State of Delaware and Massachusetts and diversity exists between Plaintiff and The TJX Companies, Inc. 28 U.S.C. 1332(c)(1).

**C.     Defendant "T.J. Maxx of CA, LLC," Is Not A Citizen Of California**

31.     T.J. Maxx of CA, LLC is now and, at all times since the commencement of this action has been, a citizen of a State other than California within the meaning of 28 U.S.C. section 1332(c)(1).  *See Davis*, 557 F.3d at 1028 (citing 28 U.S.C. 1332(c)(1)); *The Hertz Corp.*, 559 U.S. at 92-93.

32.     "A [ ] partnership or a corporation is a citizen of (1) the state under whose laws it is organized or incorporated; and (2) the state of its 'principal place of business.'" *Davis v. HSBC Bank Nevada, N.A.*, 557 F.3d 1026, 1028 (9th Cir. 2009) (citing 28 U.S.C. § 1332(c)(1)).

33.     Moreover, unincorporated associations such as limited liability companies and partnerships are also treated as "a citizen of every state of which its owners/members are citizens." *Johnson*, 437 F.3d at 899; *see also Grupo Dataflux v. Atlas Global Grp., LP*, 541 US 567, 569 (2004) (same); *Carden v. Arkoma Assocs.*, 494 US 185, 195, 110 S.Ct. 1015, 1021 (1990) (same).

34.     In this case, T.J. Maxx of CA, LLC is now, and ever since this action commenced has been, a limited liability company, organized under the laws of the State of Virginia. (Meltzer Decl., ¶ 7.) T.J. Maxx of CA, LLC a wholly owned subsidiary of The TJX Companies, Inc. ("TJX"). The TJX Companies, Inc's principal place of business is in Massachusetts because it is where its headquarters is located and where its high level officers direct, control and coordinate its activities. (*Id.* at ¶ 8.)  Additionally, the majority of The TJX Companies, Inc.'s executive and administrative functions are performed in or directed from the Framingham, Massachusetts office, including corporate finance, accounting, purchasing, marketing and information systems. (*Id.*)

35.     Even if this Court were to consider the citizenship of T.J. Maxx of CA, LLC members, it is still <u>not</u> a citizen of California because, as discussed below, **none** of its members and sub-members—(1) NBC Operating, LP, and (2) NBC Trust—are a citizen of the State of California.  Thus, there is diversity between Plaintiff and T.J. Maxx of CA, LLC.

### 1.     NBC Operating, LP, Is Not A Citizen Of California

36.     At all times since Plaintiff commenced this lawsuit, T.J. Maxx of CA, LLC's sole member has been NBC Operating, LP, and it owns 100% of T.J. Maxx of CA, LLC. (Meltzer Decl. ¶ 9.)

37.     NBC Operating, LP, is a limited partnership that at all relevant times during this litigation was organized under the laws of the State of Delaware with its principal place of business in Massachusetts.  (*Id.* at ¶ 10-11.)  NBC Operating, LP's principal place of business is in Massachusetts because it is where its headquarters is located and where its high level officers direct, control and coordinate its activities.  (*Id.* at ¶ 11.)  Additionally, the majority of NBC Operating, LP's executive and administrative functions are performed in or directed from the Massachusetts office, including corporate finance, accounting, purchasing, marketing and information systems. (Meltzer Decl. ¶ 11.)

38.     Because NBC Operating, LP, is a partnership, the Court may also examine the citizenship of its members—NBC GP, LLC and NBC Trust—for purposes of establishing diversity jurisdiction.  *See V & M Star, LP v. Centimark Corp.*, 596 F.3d 354, 357 (6th Cir. 2010) (When a member of a limited liability company is itself a partnership or association, "the federal court needs to know the citizenship of each 'sub-member' as well.").

39.     At all times since Plaintiff commenced this lawsuit, NBC Operating, LP's general partner has been NBC GP, LLC, a Delaware limited liability company, and its limited partner has been NBC Trust.  (Meltzer Decl. ¶ 12.) NBC Trust owns 100% of NBC Operating, LP.  (*Id.*)

## 2.     NBC GP, LLC Is Not a Citizen Of California

40.     NBC GP, LLC is a limited liability company that at all relevant times during this litigation was organized and existing under the laws of the State of Delaware. (Meltzer Decl. ¶ 13.)

41.     NBC GP, LLC's headquarters is located in Framingham, Massachusetts where its high level officers direct, control and coordinate its activities. (*Id.* at ¶ 14.) Additionally, the majority of NBC GP, LLC's executive and administrative functions are performed in or directed from the Framingham, Massachusetts offices, including corporate finance, accounting, purchasing, marketing and information systems.  (*Id.*)

8

42.    At all times since Plaintiff commenced this lawsuit, NBC GP, LLC's sole member has been NBC Trust, and it owns 100% of NBC GP, LLC. (*Id.* at 15.)

### 3.    NBC Trust Is Not A Citizen Of California

43.    At all times since Plaintiff commenced this lawsuit, NBC Operating, LP's limited partner has been NBC Trust, and it owns 100% of NBC Operating, LP. (Meltzer Decl. ¶ 12.)

44.    NBC Trust is a citizen for the State of Massachusetts because it is organized under the laws of the State of Massachusetts. (Meltzer Decl. ¶ 16.) NBC Trust's headquarters is located in Framingham, Massachusetts, where its high level officers direct, control, and coordinate its activities.  Additionally, the majority of NBC Trust's executive and administrative functions are performed in or directed from the Framingham, Massachusetts offices, including corporate finance, accounting, purchasing, marketing and information systems.  (*Id.* at 17.)

### D.    Dismissed Defendant "TJX, Inc." Cannot Defeat Diversity

45.    If diversity of citizenship is lacking at the time the state action was filed, but within one year, plaintiff voluntarily dismisses or amends the complaint to abandon the action against the non-diverse defendant, the remaining diverse defendants are entitled to remove. *Chohlis v. Cessna Aircraft Co*. 760 F2d 901, 903, fn. 2  (8th Cir. 1985); *Higgins v. Pittsburgh-Des Moines Co*. 635 F.Supp. 1182, 1184 (SD TX 1986). For removal to be possible, there must be a definite or unequivocal expression of intent to discontinue the action against the non-diverse defendant.  This could be a written settlement agreement, a formal stipulation of dismissal, etc. *Delatte v. Zurich Ins. Co.* 683 F.Supp. 1062, 1063 (MD LA 1988)—statement of "no hope of recovery" insufficient; *Naef v. Masonite Corp.* 923 F.Supp. 1504, 1510, 1511 (SD AL 1996)— statement that defendants "not essential to liability issue" insufficient; *Heniford v. American Motors Sales Corp.* 471 F.Supp. 328, 344 (D SC 1979)—dropping non-diverse defendant during argument to jury triggered right to remove.

DEFENDANTS T.J. MAXX OF CA, LLC, AND THE TJX COMPANIES, INC.'S NOTICE OF REMOVAL
88158930v.3

46.     Here, Plaintiff agreed to voluntarily dismiss TJX Inc., a California Corporation, and this agreement was memorialized through a filed Request for Dismissal and subsequent dismissal by the Los Angeles Superior Court.  This dismissal created complete diversity with the remaining corporate Defendants.  Therefore, the citizenship of the dismissed defendant should be disregarded as the remaining parties (Plaintiff Dorian Moore and Defendants T.J. Maxx of CA, LLC and The TJX Companies, Inc) now have complete diversity.

### E.     Doe Defendants May Be Disregarded

47.     Pursuant to 28 U.S.C. Section 1441(a), the residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. section 1332.  *Fristoe v. Reynolds Metals, Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition).  Thus, the existence of Doe defendants, 3-50, does not deprive this Court of jurisdiction.

48.     Nasi Doe is a Doe Defendant and should be disregarded.

### F.     Defendant Nasi Doe's Citizenship Should Be Disregarded Because She is A Sham Defendant

49.     Defendant Nasi Doe must be disregarded for purposes of diversity because she is a sham defendant; that is, she cannot be found liable as a matter of law. *See, e.g.,* *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001) (holding that removal based on diversity of citizenship was proper and that district court "correctly ignored" joinder of a resident defendant after it was shown that plaintiff "could not possible prevail" on her claim against the resident defendant); *Dodson v. Spillada Maritime Corp.*, 951 F.2d 40, 42 (5th Cir. 1992) (finding fraudulent joinder of non-diverse defendants where there was "no possibility that [plaintiff] would be able to establish a cause of action against them").

50.     Nasi Doe is a sham defendant because she has been fraudulently named. *See Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998) ("[F]raudulently

joined defendants will not defeat removal on diversity grounds."), *cert. denied*, 525 U.S. 963 (1998); *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987) ("If the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent."); *Lewis v. Time, Inc.*, 83 F.R.D. 455, 460 (E.D. CAL. 1979), *aff'd*, 710 F.2d 549 (9th Cir. 1983) (a sham defendant is to be ignored for purposes of removal).

51.    Joinder of a defendant is fraudulent if the defendant cannot be liable to the plaintiff on any theory alleged in the complaint. *Ritchey*, 139 F.3d at 1318 ("If the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent.") (quoting *McCabe*, 811 F.2d at 1339)).

52.    When determining whether a defendant is fraudulently joined, "[t]he court may pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available." *Lewis*, 83 F.R.D. at 455 ("[I]t is well settled that upon allegations of fraudulent joinder . . . federal courts may look beyond the pleadings to determine if the joinder . . . is a sham of fraudulent device to prevent removal."); *McCabe*, 811 F.2d at 1339 (a defendant "is entitled to present the facts showing the joinder to be fraudulent").

53.    The applicable standard parallels the standard used in deciding motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Morris*, 236 F. 3d. at 1067-68. As such, the Complaint's "factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (allegations must contain "plausible grounds to infer" that plaintiff is entitled to relief). Further, the claim fails where it lacks facts sufficient to support a cognizable legal theory. *Balisteri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th. Cir. 1990); *see also Toth v. Guardian Indus. Corp.*, 2012 WL 468244, at *5 (E.D. Cal. Feb. 13, 2012) (motion for remand denied where defamation claim against individual defendant was insufficiently plead).

11

54.     Here, Plaintiff has fraudulently named Nasi Doe– an individual supervisor – as a defendant to her Second Cause of Action for "Harassment on the Basis of Race." However, the claim against Nasi Doe is not viable for several reasons: (1) the managerial privilege precludes personal liability on the harassment claim; and (2) the harassment claim fails because Plaintiff cannot establish that the conduct was severe or pervasive.

### 1.     Conduct Allegedly Carried Out By Defendant Nasi Doe

55.     Because Plaintiff's claims for harassment are based solely on personnel decisions, Nasi Doe, as a matter of law, cannot be liable.  As the California Supreme Court held in *Reno v. Baird*, 18 Cal. 4th 640, 647 (1998), only employers are liable for the personnel management actions of their supervisors:

> By the inclusion of the "agent" language, the Legislature intended only to ensure that **employers** will be held liable if their supervisory employees take actions later found discriminatory, and that **employers** cannot avoid the liability by arguing that a supervisor failed to follow instructions or deviated from the employer's policy.

*Id.*  Thus, the Court held that "it is 'inconceivable' that the Legislature simultaneously intended to subject individual non-employers to the burdens of litigating such claims. To so construe the statute would be 'incongruous' and 'would upset the balance' struck by the Legislature."  *Id*. at 651 (citations omitted).  The Court then cautioned that "if every personnel manager risks losing his or her home, retirement savings, hope of children's college education, etc., whenever he or she made a personnel management decision, management of industrial enterprises and other economic organizations would be seriously affected."  *Id*. at 652-653.  Moreover, the court in *Reno* defined harassment, and specifically excluded from that definition conduct which is part and parcel of a supervisory employee's job performance.  *Id.* at 645-46.

56.     Under the doctrine of managerial privilege, individual managers cannot be held personally liable for tort claims brought by other employees arising from actions

12

taken within the course and scope of their managerial capacity.  *McCabe*, 811 F.2d at 1339 (applying California law, the court held that plaintiff's tort claims against two individual managers failed as a matter of law because "[the managers'] actions, according to the complaint, had been in their managerial capacity . . . [and] ratified by [their employer] . . . . [I]t is clear that 'if an agent is motivated in part by a desire to benefit his principle,' his conduct is, under California law, privileged.") (citation omitted).

57.     Here, Plaintiff's allegations demonstrate that Nasi Doe's conduct cannot give rise to liability.  The sum total of allegations raised by Plaintiff against Nasi Doe include:

a.     "PLAINTIFF exhibited various hairstyles and received harassment from her Assistant Manager NASI and others as a result." (Ex. A ¶ 11)

b.     "On or about January 17, 2021, when PLAINTIFF put her hair in braids and went into work, NASI told PLAINTIFF, 'Jamaican me crazy,' PLAINTIFF is not Jamaican, and the comments from her manager made her very uncomfortable." (Ex. A ¶ 12)

c.     "On or about February 20, 2021, when PLAINTIFF wore her hair in an afro, NASI called her a 'wild girl,' and then yelled across the store to Libi, 'did you see Dorian's hair?' NASI then said to PLAINTIFF, "I want to touch your hair, but I cannot touch it." (Ex. A ¶ 13)

d.     "In addition to the racially based comments on her hair, PLAINTIFF was also treated differently based on her race as all her co-workers were taught to work on the cash register or in the back. PLAINTIFF was not taught to do either. Further, PLAINTIFF was never promoted at the store." (Ex. A ¶ 15)

e.     "On or about March 10, 2021, PLAINTIFF wore bantu knots and braids to work. In earshot of Roya, NASI approached PLAINTIFF and said, "your hair is wild." I

13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

response, PLAINTIFF said to NASI that she did not like when NASI called her hair "wild" and to please use a different word. NASI, responded, "Oh, like what other words?" PLAINTIFF suggested that she say her hair is "nice" or "beautiful." NASI then said she had a friend that wore her hair like PLAINTIFF." (Ex. A ¶ 18)

f.   "PLAINTIFF also complained to NASI herself but the harassment and discrimination continued." (*Id.* at ¶ 17).

g.   "On or about March 14, 2021, PLAINTIFF was constructively terminated." (*Id.* at ¶ 20)

58.   Plaintiff has only one cause of action, harassment against Nasi Doe however there are no facts pled that show how Nasi Doe treated Plaintiff differently on the basis of her national origin, race, and ancestry or that any such treatment led to PLAINTIFF being constructively discharged, beyond the allegations cited above.

59.   Further, as a matter of law, personnel management decisions are not harassment. *Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 64 (1996) ("harassment consists of conduct outside the scope of necessary job performance, conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives. . . . [C]ommonly necessary personnel management actions . . . do not come within the meaning of harassment"); *Reno v. Baird*, 18 Cal. 4th 640, 646 (1998) (concluding that "the exercise of personnel management authority properly delegated by an employer to a supervisory employee might result in discrimination, but not in harassment") (quoting *Janken*, 46 Cal. App. 4th at 64).

60.   Here, any decision as to whether Plaintiff was taught the cash register or if she was eligible for promotion involved personnel actions directly and necessarily related to her management duties.  These alleged actions directly pertain to personnel management and do not come within the meaning of harassment. *See Reno*, 18 Cal. 4th at 646 ("personnel management actions, such as hiring and firing, . . . promotion or

14

demotion, performance evaluations, . . . and the like, do not come within the meaning of harassment").

### 2. Nasi Doe Is A Sham Defendant Because The Lack Of Severe Or Pervasive Conduct Precludes Personal Liability On Her Workplace Harassment Claim

61.    The conduct attributed to Nasi Doe by Plaintiff cannot support a claim for harassment.  None of the conduct alleged by Plaintiff is severe or pervasive enough, as a matter of law, to constitute unlawful harassment.

62.    Plaintiff must prove she was subjected to harassing conduct because of her national origin, race, and ancestry that was sufficiently severe or pervasive so as to alter the conditions of her employment.  *Fisher v. San Pedro Peninsula Hospital*, 214 Cal. App. 3d 590, 608 (1989).  The gravamen of a harassment claim is that, to be actionable, the conduct at issue is so severe or pervasive as to create an abusive working environment.  *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 67 (1986).  "In determining what constitutes 'sufficiently pervasive' harassment, the courts have held acts of harassment cannot be occasional, isolated, sporadic, or trivial, rather the plaintiff must show a concerted pattern of harassment of a repeated, routine or a generalized nature."  *Mokler v. County of Orange*, 157 Cal. App. 4th 121, 142 (2007).

63.    Nasi Doe's conduct cannot be considered severe because there was no physical threat or harm.  *See Hughes v. Pair*, 46 Cal. 4th 1035, 1049 (2009) (summary judgment affirmed for the employer; "employment law acknowledges that an isolated incident of harassing conduct may qualify as 'severe' when it consists of a physical assault or threat thereof"); *Lyle v. Warner Bros. Television Prods.*, 38 Cal. 4th 264, 284 (2006) (same).

64.    Further, Nasi Doe's conduct cannot be considered severe or pervasive because even repeated instances of verbal abuse, profane language, and threats of job loss are insufficient.  *See e.g., Hughes*, 46 Cal. 4th at 1049 (summary judgment affirmed for the employer; a supervisory employee threatened plaintiff's job and plaintiff was told "I'll get you on your knees eventually. I'm going to fuck you one way or another;"

15

"Most reasonably construed, defendant's comment was a threat … of financial retaliation").

65.    Plaintiff's cause of action is a textbook example of what harassment is **not**. The conduct Plaintiff claims to be "harassment" is too trivial to be actionable.  *See, e.g., Reno v. Baird,* 18 Cal. 4th 640, 646-47 (1998); *Hardin v. Wal-Mart Stores, Inc.,* No. CIV-F-08-0617 AWI, 2012 WL 691707 at * 18 (E.D. Cal., Mar. 2, 2012) ("Personnel management actions commonly necessary to carry out the duties of business and personnel management, and thus outside the purview of harassment, include 'hiring and firing, job or project assignments, office or work station assignments, promotion or demotion, performance evaluations, the provision of support, the assignment or non-assignment of supervisory functions' and decisions regarding meetings.").

66.    Plaintiff's allegations of personnel management decisions, such as promoting other employees, hardly meets the necessary standard.  As such, what Plaintiff claims to be harassment falls short of being adequately "severe or pervasive."

## V.    AMOUNT IN CONTROVERSY

67.    While Defendants deny any liability as to Plaintiff's claims, the amount in controversy requirement is satisfied because "it is more likely than not" that the amount exceeds the jurisdictional minimum of $75,000.  *See Sanchez v. Monumental Life Ins.*, 102 F.3d 398, 403-04 (9th Cir. 1996) ("[T]he defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds [the threshold] amount.") (internal quotations and citations omitted).

68.    As explained by the Ninth Circuit, "the amount-in-controversy inquiry in the removal context is not confined to the face of the complaint."  *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) (finding that the Court may consider facts presented in the removal petition).  When the amount in controversy is not apparent from the face of the complaint, a defendant may state underlying facts supporting its assertion that the amount in controversy exceeds the jurisdictional threshold.  *Gaus v. Miles, Inc.*, 980 F.2d 564, 566-67 (9th Cir. 1992).

16

69.     In determining the amount in controversy, the Court must consider the aggregate of general damages, special damages, punitive damages, and attorneys' fees. *Galt G/S v. JSS Scandinavia*, 142 F. 3d 1150, 1156 (9th Cir. 1998) (claims for statutory attorneys' fees to be included in amount in controversy, regardless of whether such an award is discretionary or mandatory); *Davenport v. Mut. Benefit Health & Accident Ass'n*, 325 F.2d 785, 787 (9th Cir. 1963) (punitive damages must be taken into account where recoverable under state law); *Conrad Assocs. v. Hartford Accident & Indem. Co.*, 994 F. Supp. 1196, 1198 (N.D. Cal. 1998) ("amount in controversy" includes claims for general and special damages, including attorneys' fees and punitive damages).

70.     Here, considered together, the general and special damages sought by Plaintiff, along with the attorneys' fees and punitive damages that might be awarded if Plaintiff prevails, establish by a preponderance of the evidence that the amount in controversy exceeds $75,000, exclusive of interest and costs, as required by 28 U.S.C. § 1332(a).

**A.     Plaintiff's Complaint Establishes That The Amount In Controversy Is At Least $2,000,000**

71.     When a defendant seeks removal on diversity grounds, "the sum demanded in good faith [by the plaintiff] in the initial pleading shall be deemed to be the amount in controversy."  28 U.S.C. § 1446(c)(2); *see Sanchez v. Monumental Life Ins. Co.,* 102 F.3d 398, 402 (9th Cir. 1996) ("[T]he sum claimed by the plaintiff controls," unless it appears "that the claim is really for less than the jurisdictional amount.") (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938)).

72.     In Plaintiff's initial pleading, Plaintiff requests relief on the first through seventh cause of action in the total amount of $2,000,000. Plaintiff alleges she is entitled to back pay in the amount of $500,000; front pay in the amount of $500,000, and general damages in the amount of $1,000,000. In addition to punitive damages, attorney fees, and costs of suit in an amount to be proven at trial. (*See* Ex. A Complaint ¶ 78; Relief, at ¶¶ 1-8 ).

17

73.    Accordingly, Plaintiff's demand for an amount of damages of **no less than $2,000,000** should be deemed the amount in controversy, which satisfies and exceeds the jurisdictional threshold.

### B.    Plaintiff's Claims Otherwise Exceed 75,000

74.    Even with Plaintiff's specific request for $2,000,000 in damages, Plaintiff's claims otherwise would exceed the amount in controversy. The amount in controversy requirement is satisfied because "it is more likely than not" that it exceeds the jurisdictional minimum based on the allegations in Plaintiff's Complaint.  *See Sanchez*, 102 F.3d at 404 ("the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds [the threshold] amount") (internal citation omitted).

75.    In the Complaint, Plaintiff alleges seven causes of action against Defendants for: (1) "Race Discrimination (FEHA) [*Gov't Code* 12940(a)]"; (2) "Harassment (FEHA) [*Gov't Code* 12940(i)]"; (3) "Retaliation [*Gov't Code* 12940(h)]"; (4) "Failure to Take all Reasonable Steps to Prevent Discrimination, Harassment, and Retaliation" [*Gov't Code* 12940(k)]; (5) "Whistleblower Protection [*Labor Code* §1102.5]"; (6) Wrongful Discharge in Violation of Public Policy; and (7) Unfair Business Practices.  Thus, it is more likely than not that the amount in controversy exceeds $75,000.

76.    Further, Plaintiff claims general and special damages, including, but not limited to, interest, attorney's fees, penalties, costs, expenses, wages, monetary compensation for discrimination, punitive damages, and emotional damages.  (*See* Ex. A, Complaint, ¶78 Relief, at ¶¶ 1-8).

77.    At the time of her separation, Plaintiff earned $15.00 per hour.  (Koch Decl., ¶ 5.)  Given that Plaintiff alleges that she was constructively terminated on March 14, 2021, she has already incurred over one year and seven months of lost compensation to date.  (Ex. A, Compl. ¶ 20.)  Plaintiff's approximate annual income would be at least $23,400, based on the calculation of $15.00 (hourly rate) x 30 (average hours per week

18

in the year prior to termination) x 52 weeks. Accordingly, Plaintiff has already incurred at least **$40,950** of lost compensation (hourly rate of $15.00 X 30 hours per week X 91 weeks (March 14, 2021 to November 13, 2022)).

78. Additionally, should Plaintiff prevail at trial, it is more likely than not that she would recover over $75,000 in damages as there have been, in recent years, several verdicts in discrimination cases entered in favor of plaintiffs in California where the awarded damages exceeded $75,000. *See e.g. Leggins v. Thrifty Payless Inc. D/B/A/ Rite Aid*, 2015 WL 4748037 (Los Angeles County Sup. Ct.) ($8,769,128 verdict in FEHA race/color discrimination, disability discrimination, and punitive damages); *Assaad v. State of California*, 2017 WL 2831363 (Los Angeles County Sup. Ct.) ($119,000 verdict on plaintiff's claims for FEHA race/color discrimination and national origin discrimination); *Harris v. Herring Networks Inc.*, 2020 WL 1890593 (San Diego County Sup. Ct.) ($1,099,674 verdict on plaintiff's claims for race/color harassment and discrimination, retaliation, failure to prevent discrimination, harassment and retaliation under FEHA, and punitive damages); *Beard v. Los Angeles Cnty. Law Library*, 2009 WL 250543 (Los Angeles Sup. Ct.) (award of $146,000 to employee who was wrongfully terminated based upon her age and race).

79. Plaintiff's allegations that she was discriminated against and constructively discharged because of her race are similar to the issues in these cases. Defendants have attached these verdicts as **Exhibit I** to the concurrently filed Declaration of Heather E. Horn for the Court's review.

## C. <u>Emotional Distress Damages</u>

80. In addition to Plaintiff's request for general damages in the amount of $1,000,000. (*See* Ex. A, Complaint, ¶78). A review of jury verdicts in California demonstrates that emotional distress awards in discrimination cases commonly exceed $75,000. *See Silverman v. Stuart F. Cooper Inc.*, 2013 WL 5820140 (Los Angeles Sup. Ct.) (jury awarded $157,001 for emotional distress damages in discrimination case); *Vasquez v. Los Angeles Cnty. Metro. Transp. Auth.*, 2013 WL 7852947 (Los Angeles

19

Sup. Ct.) (award of $1,250,000 for pain and suffering to employee in discrimination action); *Aboulafia v. GACN Inc.*, 2013 WL 8115991 (Los Angeles Sup. Ct.) (pain and suffering award of $250,000, $250,000, $250,000, and $250,267 to four employees in discrimination action); *Ward v. Cadbury Schweppes Bottling Grp.*, 2011 WL 7447633 (C.D. Cal) (jury award $5,600,000 in non-economic damages in discrimination and retaliation case); *Welch v. Ivy Hill Corp.*, 2011 WL 3293268 (Los Angeles Sup. Ct.) (award of $1,270,000 in pain and suffering to employee in a discrimination action); *Leimandt v. Mega RV Corp.*, 2011 WL 2912831 (Orange County Sup. Ct.) (jury awarded $385,000 in pain and suffering to employee in a discrimination case); *Peacock v. Quest Diagnostics*, 2010 WL 6806990 (C.D. Cal.) (jury award of $150,000 in non-economic loss to employee in action for discrimination action).

81.    Plaintiff's allegations of emotional distress are similar to the issues raised in these cases.  Defendants have attached these verdicts as **Exhibit I** to the concurrently filed Declaration of Heather E. Horn for the Court's review.

### D.    Attorney's Fees and Costs Also Could Exceed $75,000

82.    Plaintiff claims that she is entitled to attorneys' fees and costs. . (*See* Horn Decl.,Ex. A, Complaint, ¶78; Relief, at ¶6 ). Attorneys' fees are properly considered in calculating the amount in controversy for purposes of removal on grounds of diversity jurisdiction.  *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (claims for statutory attorneys' fees to be included in amount in controversy, regardless of whether such an award is discretionary or mandatory).

83.    Courts have also awarded far in excess of $75,000.00 in attorneys' fees in cases involving employment-related claims.  *See, e.g., Crawford v. DIRECTV, Inc.*, 2010 WL 5383296 (Los Angeles County Sup. Ct.) (approving attorneys' fee award of $159,762.50); *Davis v. Robert Bosch Tool Corp.*, 2007 WL 2014301, *9 (Cal. Ct. App. 2d Dist. July 13, 2007) (individual plaintiff sought $1.6 million in fees); *Denenberg v. Cal. Dep't of Transp.*, 2006 WL 5305734 (San Diego County Sup. Ct.) (attorneys' fees

award of $490,000 for claims).  Defendants have attached these verdicts as **Exhibit J** to the concurrently filed Declaration of Heather E. Horn for the Court's review.

84.     Defendants anticipate depositions being taken in this case, and that ultimately, Defendants will file a Motion for Summary Judgment.  Based on defense counsel's experience, attorneys' fees in employment discrimination and wrongful termination cases often exceed $75,000.  In this regard, it is more likely than not that the fees will exceed $75,000.00 through discovery and a summary judgment hearing, and the fees would certainly exceed $75,000.00 if the case proceeds to trial.  (Horn Decl., ¶ 4.)

### E.     <u>Punitive Damages</u>

85.     Finally, the Court must also consider Plaintiff's request for punitive damages in determining the amount in controversy.  *Davenport v. Mutual Benefit Health and Accident Ass'n*, 325 F.2d 785, 787 (9th Cir. 1963) (punitive damages must be taken into account where recoverable under state law). (*See* Ex. A, Complaint, ¶78, Relief, ¶ 5.)

86.     Plaintiff's employer, Defendant T.J. MAXX of CA, LLC, is a large entity. The economic resources of the defendant and the amount of compensatory damages are two of three factors courts consider in arriving at punitive damage awards.  *See, e.g., Lane v. Hughes Aircraft Co*., 22 Cal. 4th 405, 417 (2000) (finding "three factors relevant to the assessment of punitive damages: (1) the degree of reprehensibility of the act; (2) the amount of compensatory damages awarded; and (3) the wealth of the particular defendant.").  In *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408, 427-28 (2003), the Court held that: "The wealth of a defendant cannot justify an otherwise unconstitutional punitive damages award . . . That does not make its use [in determining the constitutionality of punitive damage awards] unlawful or inappropriate; it simply means that this factor cannot make up for the failure of other factors. . . ." (internal citations omitted).  Therefore, the request for punitive damages weighs in favor of establishing the amount in controversy.

87.     Courts have affirmed jury verdicts in cases with claims similar to Plaintiff's claims often exceed $75,000, especially when they include punitive damages, which Plaintiff also seeks.  *See, e.g., Aboulida v. GACN Inc.*, 2013 WL 811991 (Los Angeles Sup. Ct.) (award of $1,000,000 in punitive damages in discrimination case); *Ward v. Cadbury Schweppes Bottling Grp.*, 2011 WL 7447633 (C.D. Cal.) (jury awarded $9,687,400 in punitive damages to six employees in discrimination and retaliation action).

88.     Based upon the allegations contained in the Complaint, Defendants are informed and believe that Plaintiff seeks damages within the jurisdictional authority of this Court.  Because diversity of citizenship exists between Plaintiff and Defendants, and the matter in controversy between the parties is in excess of $75,000.00, this Court has original jurisdiction of the action pursuant to 28 U.S.C. section 1332(a)(1).  This action is therefore a proper one for removal to this Court.

## VI.   VENUE

89.     Venue lies in the Central District of California pursuant to 28 U.S.C. § 1441(a), 1446 (a), and 84(c).  This action originally was brought in the Superior Court of California, County of Los Angeles, which is located within the Central District of the State of California.  Therefore, venue is proper in this Court because it is the "district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).

## VII.  NOTICE OF REMOVAL

90.     Pursuant to 28 U.S.C. § 1446(d), written notice of the filing of this Notice of Removal will be given promptly to Plaintiff and, together with a copy of the Notice of Removal, will be filed with the Clerk of the Superior Court of the State of California, County of Los Angeles.

91.     This Notice of Removal will be served on counsel for Plaintiff.  A copy of the Proof of Service regarding the Notice of Removal will be filed shortly after these papers are filed and served.

92.     In compliance with 28 U.S.C. section 1446(a), true and correct copies of all process, pleadings, and orders filed and/or served in this action are attached as **Exhibits A, B, C, E, F and G** to the concurrently filed Declaration of Heather E. Horn.

## VIII.  RESERVATION OF RIGHTS

93.     By filing this Notice of Removal, Defendants do not concede nor waive any defense to this action.

## IX.    PRAYER FOR REMOVAL

94.     WHEREFORE, Defendants pray that this civil action be removed from the Superior Court of the State of California, County of Los Angeles, to the United States District Court for the Central District of California.

DATED: December 16, 2022                    Respectfully submitted,

                                            SEYFARTH SHAW LLP


                                            By: _Heather E. Horn_____
                                                  Jonathan L. Brophy
                                                  Heather E. Horn
                                                  Attorneys for Defendant
                                                  T.J. Maxx of CA, LLC. and
                                                  The TJX Companies, Inc.

23